**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-21713-CIV-MARTINEZ/AOR**

ECO BRANDS, LLC, a Delaware limited
liability company, derivatively by and through
its member MIDAS FINANCIAL GROUP,
LLC, a Delaware limited liability company,

       Plaintiff,

v.

ECO BRANDS, LLC, a Delaware limited liability
company, GIUSEPPE SINDONI, a foreign individual,
SINDONI NORTH AMERICA, LLC, a Delaware
limited liability company, KLAUS SYDOW, an
individual, RODRIGO VALLEJO, an individual,
ERICK SYDOW, an individual, SOROK, LLC, a
Delaware limited liability company,

       Defendants.

_____/

## **OMNIBUS REPORT AND RECOMMENDATION**

THIS CAUSE came before the Court upon the following motions:

(1) Plaintiff Eco Brands, LLC, a Delaware limited liability company ("Plaintiff" or "Eco Brands"), derivatively by and through its member Midas Financial Group, LLC, a Delaware Limited Liability Company's ("Midas") Motion for Preliminary Injunction and Memorandum of Law (hereafter, "Motion for Preliminary Injunction") [D.E. 52];

(2) Defendant Sindoni North America, LLC's (hereafter, "SNA") Motion to Compel Arbitration and Memorandum of Law in Support Thereof (hereafter, "SNA's Motion to Compel Arbitration") [D.E. 67]; and

(3) Defendants Klaus Sydow ("Sydow") and Sorok, LLC's ("Sorok") (together, "Sorok

1

Defendants") Alternative Motion to Compel Arbitration and Incorporated Memorandum of Law (hereafter, "Sorok Defendants' Motion to Compel Arbitration") [D.E. 68, Part 2].[1]

These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 38, 91]. The undersigned held hearings on these matters on June 24, 2020 [D.E. 62] and September 23, 2020 [D.E. 95]. For the reasons stated below, the undersigned respectfully recommends that: SNA's Motion to Compel Arbitration [D.E. 67] and Sorok Defendants' Motion to Compel Arbitration [D.E. 68, Part 2] (together, "Motions to Compel Arbitration") be GRANTED; Plaintiff's Motion for Preliminary Injunction [D.E. 52] be DENIED as moot; and this case be DISMISSED without prejudice pending arbitration proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In its Amended Complaint [D.E. 47], Plaintiff asserts the following claims against Defendants Sydow, Sorok, SNA, Rodrigo Vallejo ("Vallejo"), Erick Sydow ("E. Sydow"), and Giuseppe Sindoni (together "Defendants"):

- Count I - Violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, against Sydow, Vallejo, E. Sydow, and SNA;

- Count II - Tortious Interference with Advantageous Business Relationship, against all Defendants;

- Count III - Breach of Fiduciary Duty, against Sydow, Vallejo, and E. Sydow;

- Count IV - Civil Conspiracy, against Sydow, Vallejo, E. Sydow, and SNA;

- Count V - Constructive Fraud, against Sydow, Vallejo, and E. Sydow;

- Count VI - Breach of Implied Duty of Good Faith and Fair Dealing, against Sydow and Sorok;

---

[1] The Sorok Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [D.E. 68, Part 1] is addressed separately.

- Count VII(a) - Fraudulent Inducement, against Sydow;

- Count VII(b) – Injunction, against Sydow and SNA;[2]

- Count IX – Accounting, against Sydow and SNA;

- Count X - Breach of Fiduciary Duty, against Sydow, E. Sydow and Vallejo;

- Count XI - Breach of Fiduciary Duty, against Sydow, E. Sydow and Vallejo;[3]

- Count XII - Breach of Operating Agreement, against Sydow, E. Sydow, and Vallejo;

- Count XIII - Usurpation of Company Opportunities, against Sydow and Sorok;

- Count XIV - Common Law Fraud, against Sydow;

- Count XV - Breach of Fiduciary Duty, against Vallejo and E. Sydow;

- Count XVI - Appointment of a Receiver, against SNA; and

- Count XVII - Violations of Florida's Uniform Trade Secrets Act (FUTSA), Fla. Stat. § 688.001, et. seq., against Sydow, Vallejo, E. Sydow, and SNA.

Id. at 18-35.[4]

In support of these claims, Plaintiff alleges that it is a Delaware limited liability company with its principal place of business located at 2665 South Bayshore Drive, Suite 810, Miami, Florida 33133. Id. at 5. Plaintiff further alleges that Midas holds a 45% interest in Eco Brands. Id. at 2. Plaintiff further alleges that, pursuant to a Master Distributor Agreement ("MDA") between Eco Brands and non-party Sindoni Group, Plaintiff was the exclusive distributor of Sindoni Group's name brand cookies in the United States, largely due to Midas being able to secure

---

[2] Two counts in the Amended Complaint are designated as Count VII and there is no Count VIII. Id. at 26-27.
[3] Counts X and XI vary in their allegations. Id. at 28-29.
[4] There is no proof of service in the record for Vallejo, E. Sydow, and Giuseppe Sindoni. The latter is the owner of SNA and the principal of non-party Sindoni Group, S.R.L ("Sindoni Group"), a company registered in the Dominican Republic. See Declaration of Jonathan Sanchez ("Sanchez Declaration") [D.E. 67-1 at 3-4].

3

funding for Eco Brands. <u>Id.</u> at 6.[5] The MDA contains an arbitration provision which provides that "[a]ny controversy or claim between or among the parties relating to this Agreement shall be determined by arbitration . . . ." <u>See</u> Sanchez Declaration [D.E. 67-1 at 17]; MDA [D.E. 68-1 at 13].

Plaintiff further alleges that Sydow, the manager of Eco Brands, individually and as the owner of Sorok, which holds the remaining interest in Eco Brands, conspired to steal the MDA by intentionally mismanaging Eco Brands to cause it to default on its financial obligations and breach the MDA. <u>See</u> Am. Compl. [D.E. 47 at 6-8]. Plaintiff further alleges that Sydow was approached by Sindoni Group, and Defendants formed a plan to create a new company, SNA, to distribute Sindoni Group's cookies in the United States using Eco Brands' network, thereby cutting out Midas and taking over Eco Brands' business. <u>Id.</u>

In their respective Motions to Compel Arbitration, SNA and the Sorok Defendants (hereafter, "Arbitration Defendants") argue that all of Plaintiff's claims must be arbitrated pursuant to the MDA's arbitration clause because they center around an alleged conspiracy to terminate the MDA under false pretenses, which renders the facts surrounding the termination of the MDA fundamental to resolving this dispute. <u>See</u> Motions to Compel Arbitration [D.E. 67 at 3-4, D.E. 68 at 3-4]. As a threshold issue, Arbitration Defendants argue that, because the MDA's arbitration clause delegates the determination of arbitrability to the arbitrator, the Court must defer the arbitrability decision to the arbitral tribunal. <u>See</u> Motions to Compel Arbitration [D.E. 67 at 5-7, D.E. 68 at 8]. Additionally, Arbitration Defendants argue that, because the MDA to which Eco Brands was a party evidences the intention to delegate arbitrability to the arbitrator, the Court

---

[5] The parties to the MDA are Eco Brands and Sindoni Group. <u>See</u> MDA [D.E. 68-1 at 6]. The product that is the subject of the MDA is Sindoni Group's Pirucream brand cookies. <u>Id.</u> at 16.

should allow the arbitral tribunal to decide "gateway" issues, such as whether Eco Brands' claims are subject to arbitration and whether non-signatories to the MDA can compel arbitration of Eco Brands' claims. Id. In the alternative, Arbitration Defendants argue that the Court should find that they can compel arbitration under state law principles of equitable estoppel and agency. See Motions to Compel Arbitration [D.E. 67 at 14-17, D.E. 68 at 16-18].

On July 20, 2020, Plaintiff responded to the Motions to Compel Arbitration (hereafter, "Responses") [D.E. 78, 79]. Plaintiff argues that, under the Inter-American Convention on International Commercial Arbitration ("Panama Convention"), the Court may decide the issue of arbitrability because the arbitral tribunal does not have exclusive jurisdiction to decide this issue. See Responses [D.E. 78 at 6-7, D.E. 79 at 12-14]. Plaintiff further argues that non-signatories to the MDA cannot compel arbitration, that not all of its claims are related to the MDA, and that the Court may decide these "gateway" issues as well. Id. In the alternative, Plaintiff requests that the case be stayed pending arbitration. See Responses [D.E. 78 at 17, D.E. 79 at 21].

On July 27, 2020, SNA filed its Reply in Further Support of Motion to Compel Arbitration and Incorporated Memorandum of Law (hereafter, "SNA's Reply") [D.E. 84]. Therein, SNA argues that the Panama Convention has no impact here, and that Plaintiff failed to rebut SNA's contention that, by executing the MDA, Eco Brands intended to delegate the question of arbitrability of Plaintiff's claims related to the MDA to the Dominican arbitral panel prescribed in the MDA. Id. at 2, 5-8. On July 30, 2020, Sorok Defendants made similar arguments in their Reply in Further Support of Their Alternative Motion to Compel Arbitration and Incorporated Memorandum of Law (hereafter, "Sorok Defendants' Reply") [D.E. 85].

## ARBITRABILITY AND *KOMPETENZ-KOMPETENZ*[6]

"The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), which was enacted in 1925 to reverse the longstanding judicial hostility toward arbitration." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (citing Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626-27 (1985); Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir. 2002)). The FAA applies in federal court to diversity suits which relate to contracts involving interstate or international commerce. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402 (1967). "The FAA embodies a liberal federal policy favoring arbitration agreements." Weeks, 291 F.3d at 1312 (citations omitted). Pursuant to the FAA, a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The Panama Convention applies where the parties to the arbitration agreement are citizens of states that ratified the Panama Convention. The Panama Convention provides that: "[a]n agreement in which the parties undertake to submit to arbitral decision any differences that may arise or have arisen between them with respect to a commercial transaction is valid." 9 U.S.C. § 301. Chapter 3 of the FAA implements the Panama Convention and incorporates by reference the relevant provisions of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"). See 9 U.S.C. §§ 301, 302. It also states that FAA's Chapter 1 applies to Chapter 3 "to the extent chapter 1 is not in conflict with" the Panama Convention. See 9 U.S.C. § 307.

---

[6] *Kompetenz-kompetenz* is a principle of international commercial arbitration whereby arbitrators have the power to decide on their own jurisdiction. See Declaration of Marcos Pena-Rodriguez, Esq. ("Pena-Rodriguez Declaration") [D.E. 78-4 at 7].

To determine whether parties should be compelled to arbitrate a dispute, courts consider: (1) whether an enforceable written agreement to arbitrate exists; (2) whether the issues are arbitrable; and (3) whether the party seeking arbitration has waived the right to arbitrate. Sims v. Clarendon Nat. Ins. Co., 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004). The language of the contract defines the scope of disputes that are subject to arbitration. Gamble v. New Eng. Auto Fin., Inc., 735 F. App'x 664, 665 (11th Cir. 2018) (citing E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002)). "[C]ourts may not require arbitration beyond the scope of the contractual agreement, because 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" JPay, Inc. v. Kobel, 904 F.3d 923, 929 (11th Cir. 2018) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp., 473 U.S. at 626.

"[O]rdinarily, the question of arbitrability is undeniably an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." SBMH Grp. DMCC v. Noadiam USA, LLC, 297 F. Supp. 3d 1321, 1325–26 (S.D. Fla. 2017) (quoting U.S. Nutraceuticals, LLC v. Cyanotech Corp., 769 F.3d 1308, 1311 (11th Cir. 2014). When the parties to the arbitration agreement explicitly incorporate rules allowing arbitrators to decide questions of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to have threshold arbitrability questions resolved by the arbitrator. Id. (citing Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005)).

Further, "if the question of who may invoke the arbitration agreement is properly considered a question of jurisdiction, [the] matter must be referred in its entirety to arbitration." Id. at 1325. This question has not been answered by the Eleventh Circuit, and other circuits are split

on this issue. Id. Compare Belnap v. Iasis Healthcare, 844 F.3d 1272, 1293 (10th Cir. 2017) (after finding clear and unmistakable evidence of the parties' intent to arbitrate arbitrability, the court addressed the arbitrability of the claims against non-signatory defendants); Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1127 (9th Cir. 2013) ("Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide [the issue]."); with Brittania–U Nigeria, Ltd. v. Chevron USA, Inc., 866 F.3d 709, 715 (5th Cir. 2017) (finding that the delegation of arbitrability applied to the issue of whether non-signatory could compel arbitration to the arbitrator because the party seeking to avoid arbitration was a signatory to the arbitration agreement, and this was an important indicator of the signatory's expectations and intent.).

In a recent decision, the Supreme Court stated that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019) (internal citations and quotations omitted). Once the court determines that a valid arbitration agreement exists, then, where the arbitrability question has been delegated to an arbitrator, "a court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." Id. at 526.

## THE MDA'S ARBITRATION PROVISIONS

The arbitration clause of the MDA states:

> ARBITRATION; INJUNCTIVE RELIEF – any controversy or claim between or among the parties relating to this Agreement shall be determined by arbitration in accordance with provisions of law 50-87, of 4 of June 1987, about Chambers of Commerce and Production and Regulation of The Arbitral Court of the . . . Chambers of Commerce and Production of Distrito Nacional, Inc., in Santo Domingo,

> Dominican Republic. The panel shall consist of at least (3) arbitrators. Any such arbitration hearing shall be held in Santo Domingo, Dominican Republic, unless the parties mutually agree otherwise. Notwithstanding the foregoing, Exclusive Master Distributor acknowledges and agrees that SINDONI would be damaged irreparably in the event Exclusive Master Distributor fails or refuses to perform its obligations hereunder. Accordingly, Exclusive Master Distributor agrees that SINDONI shall be entitled to an injunction or injunctions to prevent breaches of the provisions of this Agreement, including without limitation Sections 2, 7, and 10 and 11 by Exclusive Master Distributor and to enforce specifically this Agreement and the terms and provisions hereof without bond of other security being required in any court of the Dominican Republic, this being in Addition to any other remedy to which SINDONI is entitled at law of in equity.

See MDA [D.E. 67-1 at 17].

Further, the MDA's choice of law provisions provides that it is "governed by and construed in accordance with the laws of Dominican Republic, without regards to [] conflict of law principles." Id.

### A. *Whether the parties to the MDA delegated the issue of arbitrability to the Arbitral Tribunal*

SNA has submitted the Declaration of Cesar J. Linares Rodriguez ("Linares Declaration") [D.E. 67-2], and Plaintiff has submitted the Pena-Rodriguez Declaration [D.E. 78-4], who are experts on the law of the Dominican Republic. According to these experts: the MDA's arbitration clause incorporates Law 50-87 of the Dominican Chamber of Commerce, which law prescribes the institutional procedures for international arbitrations before the Dominican Chamber of Commerce; and the Dominican Chamber of Commerce applies Dominican Republic's Law No. 489-08 on Commercial Arbitration ("DR Arbitration Law") to international arbitrations conducted before it. See Linares Declaration [D.E. 67-2 at 4-5]; see also Pena-Rodriguez Declaration [D.E. 78-4 at 4].

Thus, the experts agree that DR Arbitration Law governs international arbitrations that take place in the Dominican Republic, and Article 20 of DR Arbitration Law provides that the arbitral tribunal determines the arbitrability of disputes. See Linares Declaration [D.E. 67-2 at 6]; Pena-

9

Rodriguez Declaration [D.E. 78-4 at 7]. As explained in the Pena-Rodriguez Declaration, "Article 20 of Law 489-08 gives arbitrators the power to decide on their own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement. If any such differences relate to the validity of the arbitral agreement, the arbitral tribunal is the one that must first decide. This is the principle of *kompetenz-kompetenz*." Id. The Linares Declaration comports with this opinion. See Linares Declaration [D.E. 67-2 at 4]. Plaintiff's expert further explained that arbitral tribunals have priority over ordinary judicial courts with respect to questions of arbitrability. See Pena-Rodriguez Declaration [D.E. 78-4 at 7].

Moreover, Article 20(1) of the DR Arbitration Law states that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, as well as upon any exceptions in relation to the arbitration agreement's existence or validity or any other defenses, which, if upheld, would preclude examining the cause of action." See Law 489-08 [D.E. 67-2 at 60]. This language is nearly identical to the language found in the UNCITRAL Model Law, after which the DR Arbitration Law is modeled. See Linares Declaration [D.E. 67-2 at 2]; see also Pena-Rodriguez Declaration [D.E. 78-4 at 3].[7] Further, the Eleventh Circuit has found that "the parties' incorporation of the UNCITRAL Rules in [a] Distribution Agreement constitutes clear and unmistakable evidence that the parties agreed to arbitrate the issue of arbitrability." Earth Sci. Tech, Inc. v. Impact UA, Inc., 809 F. App'x 600, 606 (11th Cir. 2020).

Thus, by selecting the Dominican Chamber of Commerce in the arbitration provision,

---

[7] Article 23 of the UNCITRAL rules provides that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement." UNCITRAL Arbitration Rules, art. 23, https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/arb-rules-revised-2010-e.pdf.

which is governed by DR Arbitration law, the parties to the MDA have implicitly incorporated DR Arbitration Law and its *kompetenz-kompetenz* principles. Based on the foregoing, the undersigned concludes that Eco Brands and Sindoni Group clearly and unmistakably agreed that the arbitral tribunal should decide the issue of arbitrability. Earth Sci. Tech, Inc., 809 F. App'x at 606; see also Terminix Int'l Co., 432 F.3d at 1332 (Where parties incorporated AAA Rules, which include a jurisdictional provision nearly identical to that of DR Arbitration Law and UNCITRAL Model Law, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause was valid.).

### B. *Whether the Court should nevertheless decide arbitrability under the Panama Convention*

Plaintiff argues that Article 3 of the Panama Convention expressly authorizes the Court to determine arbitrability. See Responses [D.E. 78 at 6, D.E. 79 at 12-14]. Plaintiff relies on 9 U.S.C. § 303(a), which provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for . . . ." Id. However, this argument fails because Section 303(a) relates to the court's power to compel arbitration, not who decides the arbitrability of claims.

Plaintiff further argues that the Court may decide arbitrability because Article 20 of DR Arbitration law does not state that the Dominican arbitral tribunal has exclusive jurisdiction over the question of arbitrability. As discussed above, the Court's analysis is whether Eco Brands intended to delegate arbitrability, not whether the arbitral tribunal has exclusive jurisdiction. See Terminix Int'l Co., 432 F.3d at 1332 ("By incorporating the AAA Rules . . . the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); see also Henry Schein, Inc., 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability

11

question to an arbitrator, a court may not override the contract.").

Finally, Plaintiff argues that the Inter-American Commercial Arbitration Commission ("IACAC") applies and IACAC rules do not preclude the Court from determining arbitrability. Article 3 of the Panama Convention provides that, "in the absence of an express agreement between the parties, the arbitration shall be conducted in accordance with the rules of procedure of the [IACAC]." See Panama Convention [D.E. 78-2 at 2]. However, Plaintiff's reliance on IACAC is misplaced, given that the MDA expressly invokes DR Arbitration Law. Therefore, the undersigned concludes that Plaintiff's reliance on the Panama Convention to require the Court to decide arbitrability is misplaced.

### C. *Whether the Court should decide the issue of arbitrability where a non-signatory seeks to compel arbitration*

Plaintiff argues that the Court may decide the threshold question of arbitrability where a non-signatory seeks to compel arbitration. See Responses [D.E. 78 at 9-12, D.E. 79 at 14-17]. Plaintiff relies on SBMA Grp. DMCC, where the court reasoned that interpreting ambiguity as giving arbitrators the power to decide arbitrability as to a non-party "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator would decide." SBMH Grp. DMCC, 297 F. Supp. 3d at 1326 (quotation omitted). In this case, however, Eco Brands not only had the expectation and intention to arbitrate "any controversy or claim" with Sindoni Group when it signed the MDA, Eco Brands and Sindoni Group are currently in arbitration before the Dominican Chamber of Commerce pursuant to the arbitration provision of the MDA over, among other issues, whether Sindoni Group properly terminated the MDA. See Supplemental Declaration of Cesar J. Linares Rodriguez ("Supplemental Linares Declaration") [D.E. 84-1 at 3]; see also Sanchez Declaration [D.E. 67-1 at 7.]

12

Given that Plaintiff's claims here relate to the termination of the MDA and given its involvement in the ongoing arbitration in the Dominican Republic, it is not unreasonable to allow that arbitral tribunal to decide the threshold question of whether the Arbitration Defendants can compel arbitration. See Henry Schein, Inc., 139 S. Ct. at 529 ("[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.")

### D. *Whether all of Plaintiff's Claims Fall Within the Scope of the Arbitration Provision*

Plaintiff argues that some of its claims should be heard by the Court rather than the arbitral tribunal, such as claims for misappropriation of trade secrets, tortious interference with business relationships, and breach of fiduciary duty against Sydow, because these claims are not related to the MDA. See Response to Sorok Defendants' Motion to Compel Arbitration [D.E. 79 at 17-19]. However, the MDA's arbitration clause provides for arbitration of "any controversy or claim between or among the parties," which is considered broad because it "evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause." Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P., 670 F. Supp. 2d 1350, 1355 (S.D. Fla. 2009) (quoting Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218 (2nd Cir.2001)); see Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (holding that arbitration clause providing for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement" was broad and encompassed claim of fraud in inducement of entire contract). Given this broad language and corresponding evidence of Eco Brands' intent to delegate the issue of arbitrability of claims to an arbitrator, this threshold issue should also be presented to the Dominican arbitral panel in the first

instance.

## CONCLUSION

In light of the foregoing analysis establishing that there is "clear and unmistakable" intent to delegate the arbitrability of the claims to an arbitrator in the MDA, the Dominican arbitral panel should decide the gateway issues of whether Plaintiff's claims are subject to arbitration and whether non-signatories can compel arbitration of Plaintiff's claims. See Henry Schein, Inc., 139 S. Ct. at 529 ("A court has no business weighing the merits of the grievance because the agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.") (internal citations and quotations omitted). Therefore, the Motions to Compel Arbitration should be granted as to all claims, and the case should be dismissed without prejudice pending arbitration proceedings. See Hodgson v. NCL (Bahamas), Ltd., 151 F. Supp. 3d 1315, 1317 (S.D. Fla. 2015) (Finding that cases may be dismissed after compelling arbitration where all issues raised in court are submitted to arbitration).

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS as follows:

1) That SNA's Motion to Compel Arbitration [D.E. 67] be GRANTED;

2) That the Sorok Defendants' Motion to Compel Arbitration [D.E. 68, Part 2] be GRANTED;

3) That Plaintiff's Motion for Preliminary Injunction [D.E. 52] be DENIED as moot; and

4) That this cased be DISMISSED without prejudice pending arbitration proceedings.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E.

Martinez. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 5th day of February, 2021.

                                                     ALICIA M. OTAZO-REYES
                                                    UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Jose E. Martinez
     Counsel of Record